FEDERAL LAND BANK OF NEW ORLEANS *v.* GARNER *et al.*

(Division B.   Nov. 21, 1938.)

[184 So. 469.   No. 33393.]

W. L. Pack, Jr., and **T. H. Hedgepeth**, both of New Orleans, La., for appellant.

Breed **O**. **Mounger,** of Tylertown, for appellees.

Argued orally by **W. L. Pack, Jr.**, for appellant, and by **Breed O. Mounger,** for appellee.

**McGehee, J.**, delivered the opinion of the court.

The appellees filed their bill of complaint in the chancery court of Walthall County in September, 1934, alleging that they had borrowed some money from the appellant on the 1st day of May, 1925, secured by a deed of trust on certain lands in said county; that they did not receive credit for the sum of $520 thereafter paid to the appellant on this indebtedness; and that a residence located on the property had been destroyed by fire, resulting in the payment of the insurance thereon in the sum of $900 to appellant by the fire insurance company; and further alleging that an agreement had been entered into between the parties whereby this insurance money was to be paid to appellees for the purpose of rebuilding the residence, but that the appellant failed to carry out the said agreement and this money "was applied on the loan and all payments were set up until the year 1939."

The bill of complaint further alleged that the appellant was at the time of the filing thereof engaged in foreclosing the security, and that the appellees would thereby suffer great loss and embarrassment; but that if the letter of their contract with the appellant was carried out by it the appellees would be in position to pay what they may owe; and wherefore, they prayed for an in-

junction to prevent the trustee from making the sale advertised for October 1, 1934.

On this bill of complaint the chancellor, on the following day after the filing thereof, caused the writ of injunction to be issued as prayed for, and provided in the order that no injunction bond would be required.

Presumably the injunction was attempted to be issued under the provisions of Chapter 247 of the Laws of 1934, known as the Moratorium Act, since there could have been no other authority for the issuance of a writ of injunction under the circumstances without the requirement of a bond. Moreover, it is provided in that act that precedent to the granting of an injunction against a foreclosure en pais it must affirmatively appear in the petition or complaint seeking such injunction that the petitioner was unable under Federal regulations to refinance his indebtedness through any agency or instrumentality of the United States Government, and that the creditor had refused to accept the terms of the refinancing offered or recommended by any agency of such Government, or it must be alleged that an application for such refinancing was then pending. The only material allegations of the bill of complaint on which the injunction was issued were those herein first stated, from which it clearly appears that no case was stated for the issuance of an injunction under the said Moratorium Act. Moreover, section 14 of the act exempted from its provisions any mortgage held by the United States or by any agency thereof, and it was held in the case of Federal Land Bank of New Orleans v. Tatum et al., 174 Miss. 264, 164 So. 319, that said bank was an agency of the United States within the meaning of said act. Thus it clearly appears that the issuance of the writ without the requirement of an injunction bond was done without authority of law.

A motion for the dissolution of the injunction was filed on October 26, 1934, and came on for hearing in vacation five days later when it was taken under advisement

from time to time until the appellees were granted a decree on the 26th day of May 1936 allowing them to file an amended bill of complaint within sixty days thereafter. The amended bill set forth no cause for the original issuance or the continuance of the injunction in force in the absence of a bond given for that purpose. In the case of Federal Land Bank v. Lee et al., 174 Miss. 774, 165 So. 613, the court in responding to a suggestion that at a special session of the legislature subsequent to 1934 a new act had been passed making the Federal Land Bank subject to said Chapter 247, supra, said that, ''we cannot take notice of this act because the rights of the parties are governed by conditions existing at the time the injunction was issued.''

The amended bill of complaint sought an accounting from the appellant in regard to the indebtedness secured by the deed of trust, and alleged that they were not informed as to the amounts which they had paid thereon or as to the amount remaining due to the appellant, if any. Answer under oath was not waived. The appellant filed its answer under oath and made an exhibit thereto a statement of the debits and credits due in connection with the loan secured by the deed of trust in question. On the final hearing which was held on the 22d day of July, 1937, before final decree in February, 1938, it was contended by the appellees that they had fully paid the indebtedness, considering the application of the insurance money thereon, and that $200 of the money secured by the deed of trust here involved was never received by them, after being retained by the appellant pending the building of a tenant house on the land. It was shown however that credit had been given for all payments made on the loan and that there was a balance of $978.39 still due the appellant on said indebtedness as of the 1st day of October, 1936, when the accounting was rendered, provided the deferred portion of the loan was finally paid over to the appellees or to their authorized agent, the local National Farm

Loan Association, at Magnolia, Mississippi, through which the application for the loan had been made by the appellees as members of such association. On this particular point, the proof disclosed without dispute that the appellant sent its check for this $200 to the said local National Farm Loan Association, payable to Mrs. Kittie Garner, one of the appellees and owner of the land, and to Thomas Mitchell, her attorney, and Dr. W. M. Wroten, Secretary and Treasurer of said association. This check was duly paid and bore as endorsements the names of the three payees hereinbefore mentioned. It was shown that this check was deposited, when so endorsed, to the credit of the said Dr. W. M. Wroten in a local bank at Magnolia, and the records of the bank disclosed that the amount was checked out by one check for $16.65 and another check for $183.35 given by the said Dr. W. M. Wroten against such account. At the time of the trial, Dr. W. M. Wroten had died and these cancelled checks could not be located. It was testified to by his son on behalf of the appellant that the check for $16.65 was to himself as a local insurance agent who had placed insurance in connection with the loan, and that the other check for $183.35 was delivered by him to the appellee J. C. Garner, husband of Mrs. Kittie Garner, who had made repeated visits to his office inquiring about the deferred portion of the loan prior to that time; that during the nearly ten years intervening since that time no further inquiry or complaint had been made. Appellees deny having received any money on the check last mentioned but the testimony of Dr. Wroten's son as to the delivery of the same to J. C. Garner was not specifically denied. Unless the appellees received the benefits of the $200 deferred portion of the loan, the only rational conclusion left to be reached would be that such proceeds were converted by Dr. W. M. Wroten or his son to their own use and benefit. The record in the case does not justify even a suspicion that the proceeds were so handled and we feel confident that

the chancellor did not so infer. Moreover, the principal portion of the net proceeds of this loan, as well as those of a former loan, which had been increased by the one in question, had been sent to, and were admittedly disbursed through the agency of the local National Farm Loan Association without objection on the part of the appellees, and it is not permissible for them to now deny the authority of the secretary of such local association to receive and disburse the proceeds of the loans on their behalf, even though the genuineness of the endorsements on the checks are in dispute.

As to the plea of payment, the burden was on the appellees to prove that they had made payments which had not been duly credited on the account filed by appellant as an exhibit to its answer under oath. We do not think that they met this burden. On the other hand, we are of the opinion that every payment claimed to have been made was duly credited thereon leaving the balance due the appellant in the sum hereinbefore stated. It would unduly prolong this opinion to enter into a discussion of each charge and credit made on a former loan of $1,000 executed on May 15, 1920, and the loan here in question of $1,600, executed May 1, 1925, and which latter loan was an increased one to liquidate the first and supply the borrowers with additional funds, but we deem it sufficient to say that these loans bore 5½% interest per annum on the thirty-five year amortization plan on which the Federal Land Bank loans are usually made, and that on November 1, 1920, appellees paid $32.92 on the first loan and $65 per annum in November from 1921 to 1924, inclusive, as the total payments made or claimed to have been made on the first loan prior to the execution of the second, leaving a balance of $969.57 due when the new loan was made, due to the fact that most of the annual payment made during the early life of the loan is applied to interest under such amortization plan. This balance was deducted from the proceeds of the new loan of $1,600, and thereafter the sum of $57.31 was paid

on the new loan in November 1925, and the further sum of $104 annually from 1926 to 1930, inclusive (the last installment of $104, however, being made up of $81.92 paid by appellees at that time and the remainder being an interest adjustment made out of the proceeds of the insurance money) plus the application of the $900 insurance realized from a fire loss on February 29, 1930. Appellees point out no other credits to which they would be entitled. They paid nothing further after November 7, 1930, and neither have they paid any taxes since that time. Interest on delinquencies is charged at 8% per annum. There was an expense item in connection with the enjoined foreclosure sale. The court below rendered a decree in favor of appellant for only the taxes advanced by them amounting to $182.31, and perpetuated the injunction on payment thereof.

Upon a most careful examination of the record, we have reached the conclusion that the decree of the chancellor is not supported by the proof and that the injunction should have been dissolved and the indebtedness fixed at the sum claimed by the appellant, with a right to proceed with the foreclosure of the deed of trust in default of the payment thereof. It is so ordered.

Reversed and judgment here for the appellant.